UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ANDREW M.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:17-cv-03976-MJD-RLY |
| | ) |
| NANCY A. BERRYHILL, Deputy Commissioner | ) |
| for Operations, Social Security Administration,[2] | ) |
| | ) |
| Defendant. | ) |

**ENTRY REVIEWING THE DEPUTY COMMISSIONER'S DECISION**

Plaintiff Andrew M. applied for disability insurance benefits from the Social Security Administration ("SSA") on August 10, 2012, alleging an onset date of July 1, 2012. [Filing No. 16-2 at 12.] His application was initially denied on October 17, 2012, [Filing No. 16-5 at 22], and upon reconsideration on December 26, 2012, [Filing No. 16-5 at 32]. Administrative Law Judge Blanca B. de la Torre (the "ALJ") held a hearing on August 13, 2014. [Filing No. 16-3 at 33-62.] The ALJ issued a decision on September 24, 2014, concluding that Andrew M. was not entitled to

---

[1] In an attempt to protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

[2] It has come to the Court's attention that on March 6, 2018, the General Counsel of the U.S. Government Accountability Office (GAO) notified the President that effective November 17, 2017, Nancy A. Berryhill could no longer serve as the "Acting Commissioner" of the Social Security Administration pursuant to the Federal Vacancies Reform Act of 1998, Pub.L.No. 105-277, Div. C, Title I, 112 Stat. 2681-611 (Oct. 21, 1998), as amended, 5 U.S.C. §§ 3345-3349d. GAO, https://www.gao.gov/products/D18772#mt=e-report (last visited Aug. 13, 2018). The case caption has been updated to reflect Ms. Berryhill's current official title.

1

receive disability insurance benefits. [Filing No. 16-4 at 21.] However, the Appeals Council remanded the claim on March 31, 2016, with instructions to obtain supplemental evidence from a vocational expert ("VE"). [Filing No. 16-4 at 45-46.] The ALJ conducted a second hearing on July 8, 2016, [Filing No. 16-2 at 60-86], and again issued an unfavorable decision denying the claim on November 2, 2016, [Filing No. 16-2 at 9]. The Appeal Council subsequently denied review on September 29, 2017. [Filing No. 16-2 at 2.] On October 30, 2017, Andrew M. timely filed this civil action, asking the Court to review the denial of benefits pursuant to 42 U.S.C. § 405(g). [Filing No. 1.] For the reasons set forth below, the Deputy Commissioner's decision is **AFFIRMED**.

## I.
### STANDARD OF REVIEW

"The Social Security Act authorizes payment of disability insurance benefits … to individuals with disabilities." *Barnhart v. Walton*, 535 U.S. 212, 214 (2002). "The statutory definition of 'disability' has two parts. First, it requires a certain kind of inability, namely, an inability to engage in any substantial gainful activity. Second, it requires an impairment, namely, a physical or mental impairment, which provides reason for the inability. The statute adds that the impairment must be one that has lasted or can be expected to last … not less than 12 months." *Id.* at 217.

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668,

678 (7th Cir. 2008), this Court must afford the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

The ALJ must apply the five-step inquiry set forth in 20 C.F.R. § 404.1520(a)(4)(i)-(v), evaluating the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Deputy Commissioner]; (4) whether the claimant can perform [his] past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000) (citations omitted) (alterations in original). "If a claimant satisfies steps one, two, and three, [he] will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then [he] must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id*. The ALJ uses the RFC at Step Four to determine whether the claimant can perform his own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 404.1520(iv), (v). The burden of proof is on the claimant for Steps One through Four; only at Step Five does the burden shift to the Deputy Commissioner. *See Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Barnett*, 381 F.3d at 668. When an ALJ's decision is not supported by substantial evidence, a remand for further proceedings is typically the appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). An award of benefits "is appropriate where all factual issues have been resolved and the record can yield but one supportable conclusion." *Id.* (citation omitted).

## II.
### BACKGROUND

Andrew M. was 27 years of age at the time he applied for disability insurance benefits. [Filing No. 16-7 at 2.] He has at least a high school education and previously worked as a laundry attendant, warehouse worker, and banquet set-up person. [Filing No. 16-2 at 26-27.][3]

The ALJ followed the five-step sequential evaluation set forth by the Social Security Administration in 20 C.F.R. § 404.1520(a)(4) and ultimately concluded that Andrew M. was not disabled. [Filing No. 16-2 at 28.] The ALJ found as follows:

- At Step One, Andrew M. had not engaged in substantial gainful activity[4] since July 1, 2012, the alleged onset date. [Filing No. 16-2 at 14.]

- At Step Two, he had the following severe impairments: "residuals of amputation of the right forefoot in 2004 and revision of grafting in 2014," blindness of the left eye, and hypertension. [Filing No. 16-2 at 15.]

- At Step Three, he did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. [Filing No. 16-2 at 17.]

- After Step Three but before Step Four, he had the RFC "to perform work within the sedentary range, as defined in 20 CFR 404.1567(a). The claimant can lift, carry, push, and

---

[3] The relevant evidence of record is amply set forth in the parties' briefs and need not be repeated here. Specific facts relevant to the Court's disposition of this case are discussed below.

[4] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a).

pull 10 pounds occasionally and less than 10 pounds frequently. With appropriate breaks in the morning, at lunch and in the afternoon, he can sit for a total of 6 hours in the 8-hour workday and stand and/or walk for a total of 2 hours in the 8-hour workday. The claimant is unable to work on ladders, ropes, or scaffolds. He occasionally can climb ramps and stairs, balance, stoop, crouch, kneel, or crawl. The claimant cannot tolerate concentrated exposure to extreme cold, wetness, or industrial vibrations. He cannot work on wet, slippery, or uneven surfaces. He cannot work at unprotected heights. He cannot work with materials with a font smaller than the standard 12-point or with objects smaller than a golf ball. He can use a computer monitor occasionally." [Filing No. 16-2 at 20.]

- At Step Four, relying on the testimony of the VE and considering Andrew M.'s RFC, he was incapable of performing his past relevant work as a laundry attendant, warehouse worker, and banquet set-up person. [Filing No. 16-2 at 26.]

- At Step Five of the analysis, relying on VE testimony and considering Andrew M.'s age, education, and RFC, there were jobs that existed in significant numbers in the national economy that he could have performed through the date of the decision. [Filing No. 16-2 at 27-28.]

## III.
### DISCUSSION

Andrew M. asserts that substantial evidence does not support the ALJ's Step Five determination that he is capable of performing work as either a machine operator or an interviewer. The Court will consider each job in turn after discussing the standard.

As was noted above, at Step Five of the sequential analysis, if the claimant is not able to perform his past work, the Deputy Commissioner bears the burden of showing that he is capable of performing other jobs that exist in significant numbers in the economy. An ALJ is required to take administrative notice of job information contained in various publications, including the Dictionary of Occupational Titles ("DOT"), published by the Department of Labor. See 20 C.F.R. § 404.1566(d)(1). The ALJ often also relies on testimony from a VE to "supplement the information provided in the DOT by providing an impartial assessment of the types of occupations in which claimants can work and the availability of positions in such occupations." *Weatherbee v. Astrue,* 649 F.3d 565, 569 (7th Cir. 2011).

The ALJ found at Step Five that Andrew M. was capable of performing two unskilled, sedentary occupations: a machine operator, DOT# 690.685-194, with 52,000 jobs available nationally and an interviewer, DOT# 205.367-014, with 33,000 jobs available nationally. [Filing No. 16-2 at 27-28.] To arrive at her conclusion, the ALJ elicited testimony from a VE by posing a hypothetical describing work-related limitations consistent with her eventual RFC finding, to which the VE affirmed that an individual with those limitations would be capable of working in the above jobs available in those numbers in the national economy. [Filing No. 16-2 at 80-83.]

"When a VE or VS provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE or VS evidence and information provided in the DOT." Social Security Ruling ("SSR") 00-4p (S.S.A. Dec. 4, 2000), 2000 WL 1898704 at *4. "When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled." SSR 00-4p, 2000 WL 1898704 at *2. Moreover, the ALJ "will explain in the determination or decision how he or she resolved the conflict. The adjudicator must explain the resolution of the conflict irrespective of how the conflict was identified." *Id.* at *4. The Seventh Circuit has held that the ALJ's duty continues under the ruling, to identify, resolve, and explain the conflict, even if the VE answers incorrectly that their testimony was consistent with the DOT. *See Overman v. Astrue*, 546 F.3d 456, at 463 (7th Cir. 2008).

Here, the ALJ made the required inquiry at the conclusion of her hypothetical questions posed to the VE. "Is your testimony consistent with the DOT?" [Filing No. 16-2 at 84.] The VE responded, "Yes, Judge. But the Dictionary does not speak to the issue of elevation of the legs. And I'm basing that on nearly 40 years' experience with placement." [Filing No. 16-2 at 84.]

Plaintiff's representative was given an opportunity to cross-examine the VE and posed some of his own hypothetical questions, but did not object to the VE's testimony in any way, nor did he identify any conflict with the DOT either directly or via questioning. [Filing No. 16-2 at 84-86.]

The Seventh Circuit held in *Overman* that "the failure of Overman's counsel to identify the conflicts at the time of hearing is not without consequence. Overman now has to argue that the conflicts were obvious enough that the ALJ should have picked up on them without any assistance, for SSR 00-4p requires only that the ALJ investigate and resolve *apparent* conflicts between the VE's evidence and the DOT." *Overman*, 546 F.3d at 463 (emphasis in original).

### A. Machine Operator

Andrew M. now asserts that substantial evidence does not support the ALJ's Step Five determination that he could perform work as a machine operator, because the description of the job given in the DOT matching the job number conflicts with the VE testimony that the job would be possible for an individual with the same limitations as those described in the eventual RFC finding.[5] [Filing No. 18 at 7-10.] Specifically, the DOT description for the job listed as a "Grinding-Machine Operator, Automatic" consist entirely of using a machine to level the faces of "pearl button blanks," which are themselves directly handled by the machine operator in order to put them in and take them out of the grinder. DICOT 690.685-194 (G.P.O. 1991), 1991 WL 678545. However, the RFC included the limitation that he "cannot work [. . .] with objects smaller

---

[5] The transcript of the administrative hearing indicated that the VE supplied DOT# 690.605-194, which does not correspond with any job title listed in the DOT. [Filing No. 16-2 at 83.] The ALJ listed the job in the written decision as a "machine operator" with DOT# 690.685-194. [Filing No. 16-2 at 28.] Plaintiff does not raise any argument based on the discrepancy with the job number, and instead makes his argument based on the ALJ's job number. [Filing No. 18 at 7-10.] Accordingly, the Court will follow suit and assume, as the ALJ apparently did, that the VE meant the closest job number that does correspond with a machine operator title in the DOT.

than a golf ball." [Filing No. 16-2 at 20.] Andrew M. asserts that a pearl button blank is smaller than a golf ball. [Filing No. 18 at 10.]

The Court finds that most pearl button blanks are smaller than a golf ball. The Deputy Commissioner disputes the point (or at least argues that Plaintiff has not proven their assertion to the contrary). [Filing No. 19 at 8.] The Deputy Commissioner provides evidence from the USGA that a golf ball is 1.68 inches in diameter. *Id.* (citing USGA, http://www.usga.org/content/usga/home-page/rules/rules-and-decisions.html#!appendix-iii (last visited Aug. 20, 2018) (also provides the diameter in metric to be 42.67 mm). The Deputy Commissioner does not provide any evidence concerning the size of a pearl button blank (a circular object that is cut from a shell, rather than an actual pearl, that is used to make a button that is roughly the same size as the end result). However, the record does contain information provided by Andrew M. in connection with his appeal to the Appeals Council showing that one could order blanks from a particular supplier ranging in diameter from 9-11.5 mm. [Filing No. 16-10 at 13.] While pearl button blanks do range in size, the vast majority of them are less than 42.67 mm in diameter. *See* Australian Mother of Pearl Co., http://orders.mopsupplies.com/Listing/Category/?categoryId=4553724&page=2&sortItem=0&sortDirection=0 (last visited Aug. 20, 2018). Moreover, common sense would dictate that most buttons are indeed smaller than golf balls. Given the job description, there is an apparent and obvious conflict between the DOT and the RFC. The ALJ could have been alerted to the conflict by simply reading the description in the DOT (a publication which the ALJ must take administrative notice of the information contained therein).

The Deputy Commissioner further argues as a matter of law based on the Seventh Circuit decision in *Weatherbee* that because the VE was supplying only a representative job title from a

larger category of machine trade jobs, any conflict between the particular job description and the RFC would not be fatal to the ALJ's Step Five finding. [Filing No. 19 at 8 (citing *Weatherbee v. Astrue*, 649 F.3d 565 (7th Cir. 2011). The Deputy Commissioner notes that the larger category of jobs entail working with a wide range of materials and objects including "machining plastic materials, synthetic resins, synthetic rubber, cellulosic and manmade organic fibers, including artificial leather" etc. [Filing No. 19 at 9.] However, the Court does not find the instant case analogous to the situation in *Weatherbee*. In *Weatherbee,* it was the Plaintiff that provided a DOT job number and description for a specific job title of an "Office Clerk," which the Plaintiff argued was being referenced by the VE when the VE testified that "some general office clerk jobs" would be possible given a specific hypothetical. *Weatherbee*, 649 F.3d at 571. The Plaintiff argued that the "Office Clerk" title could not be performed based on the description of that particular job, given the RFC. *Id*. However, the Circuit observed that the VE had not provided that specific job title, but was referencing instead a larger category of jobs, which despite the ambiguity did not include the specific title of an "Office Clerk." *Id*. Moreover, the Circuit noted that the VE had specifically provided a different representative job from the larger category, a "Document Preparer," which did not appear to conflict with the RFC. *Id.* Here, the VE did provide the representative job title in question as matching the hypothetical. [Filing No. 16-2 at 83.] The fact that the particular title is only one job within a larger category is not material. Even if there are other machine operator jobs that would not involve working with objects smaller than a golf ball, it is obvious from the conflict between the one representative job title that was provided by the VE that she did not accurately remove from consideration those jobs that necessarily include working with objects smaller than a golf ball. At the very least, if in fact there does exist other machine operator jobs that do not conflict with the limitation, the number of jobs figure provided by the VE

is not a reliable estimate. Accordingly, the Court finds that substantial evidence does not support that Andrew M. can perform 52,000 machine operator jobs.

### B. Interviewer

Andrew M. also argues that substantial evidence does not support the ALJ's determination that he could perform work as an interviewer. [Filing No. 18 at 10.] He once again asserts that there is a conflict between the VE's testimony and the DOT. [Filing No. 18 at 11.] However, Plaintiff additionally asserts that the VE was "materially confused" about the job provided, giving information from a separate publication, O*NET rather than the DOT. [Filing No. 18 at 12.] Andrew M. also argues that the job is obsolete. [Filing No. 18 at 13.]

The Court finds that there was no apparent and obvious conflict between the VE's testimony and the DOT. Andrew M. points out that the DOT job number provided at Step Five by the ALJ as corresponding with an interviewer, [Filing No. 16-2 at 28], matches the DOT title for a "Charge-Account Clerk," [Filing No. 18 at 11]. The DOT description of the job is as follows:

> Interviews customers applying for charge accounts: Confers with customer to explain type of charge plans available. Assists customer in filling out application or completes application for customer. Reviews applications received by mail. Files credit applications after credit department approves or disapproves credit. May check references by phone or form letter and notify customer of acceptance or rejection of credit [CREDIT CLERK (clerical)]. May verify entries and correct errors on charge accounts [CUSTOMER-COMPLAINT CLERK (clerical)], using adding machine. May answer credit rating requests from banks and credit bureaus. May issue temporary shopping slip when credit references appear satisfactory.

DICOT 205.367-014 (G.P.O. 1991), 1991 WL 671715. Andrew M. asserts that credit applications used in the position are required to be in 10-point font, [Filing No. 18 at 11 (citing *Strubel v. Capital One Bank (USA)*, 179 F. Supp. 3d 320, 328 (S.D. N.Y. 2016))], while the RFC includes a limitation that he "cannot work with materials with a font smaller than the standard 12-point," [Filing No. 16-2 at 20]. The Court reads the case a little differently, that credit card applications

are required to be in at least 10-point font.  The Court also wonders, even if the applications are in 10-point font, what exactly would preclude the worker from using other means to enlarge the font before reading them?  However, neither distinction is relevant to the analysis here.  The DOT description does not in any way reference the font sizes that a charge-account clerk would need to be able to read.  The ALJ could not be expected to have such a detailed understanding of credit card applications that she would know they necessarily involve working with font sizes smaller than 12-point, such that the ALJ would be required to pick up on the conflict between the VE's testimony and the DOT simply because it references credit card applications in the job description.  Accordingly, Plaintiff's failure to raise the conflict at the hearing is fatal to his claim here.

Plaintiff's claim is also unavailing that substantial evidence does not support the VE's testimony because the VE was materially confused.  Andrew M. points out that ALJ asked the VE to consider whether certain jobs could be performed within in the context of a hypothetical, "And the second occupation is Interviewer Other than Eligibility and Loan.  And the DOT that I was offered was 205.367-014, sedentary, SVP: 2."  [Filing No. 16-2 at 81.]  The VE responded that the job was within the parameters of the hypothetical because it only required near acuity occasionally (while the RFC also limits viewing a computer monitor to occasionally).  [Filing No. 16-2 at 81-82.]  Andrew M. points out that the job title supplied by the ALJ does not match the DOT job title under that number (as noted above the DOT number corresponds with a charge-account clerk).  Plaintiff argues on that basis that the VE must have compared the hypothetical limitations with another publication, O*NET, which does have a job group matching the title supplied by the ALJ.  [Filing No. 18 at 12.]  The title "interviewer other than eligibility and loan" was given by a separate VE in a prior hearing held in connection with this claim and then the title was repeated by the ALJ in the most recent hearing.  [Filing No. 16-3 at 59.]  However, there is nothing material about the

title discrepancy itself. *See Weatherbee*, 649 F.3d at 571-72. The ALJ supplied the DOT number and the VE testified based on information that is contained in the DOT and corresponds with that number. *See* DICOT 205.367-014 (G.P.O. 1991), 1991 WL 671715 (near acuity is listed as being occasionally required). The Court does not find any basis to conclude that the VE was testifying based on a different publication. In fact, the VE's response supports that she was consulting the DOT based on the type of information she reported. The VE provided substantial evidence that the ALJ was able to rely on that an individual could do the job corresponding with the DOT job number.

The Court also does not find that a charge-account clerk is an obsolete job, simply because as Plaintiff contends, it references that an adding machine may be used to verify calculations. [Filing No. 18 at 13.] According to the Seventh Circuit, the ability to perform an obsolete job listed in the outdated DOT would not be substantial evidence that a claimant is not disabled. "If the only jobs that the applicant is physically and mentally capable of doing no longer exist in the American economy (such as pin setter, phrenologist, leech collector, milkman, pony express rider, and daguerreotypist), the applicant is disabled from working, and likewise, as a realistic matter, if there is an insignificant number of such jobs." *Herrmann v. Colvin*, 772 F.3d 1110, 1113 (7th Cir. 2014). However, unlike the examples given, a charge-account clerk is not a job that is wholly obsolete, where it exclusively dealt with an outdated technology or service that is no longer utilized in the national economy. The Court has no doubt that the modern economy still includes jobs involving applying for and working with credit applications. The outdated reference to an adding machine does not render the job itself obsolete. While a calculator or other device may have replaced the adding machine, the job itself remains viable (or at least the Court does not have sufficient evidence before it to conclude otherwise).

Accordingly, the Court cannot find any basis raised by the Plaintiff to conclude that the ALJ's determination that he was capable of working as an interviewer was not supported by substantial evidence. With the assistance of the VE, the ALJ found that there were 33,000 such jobs available in the national economy. [Filing No. 16-2 at 28; *see* Filing No. 16-2 at 83.] The Seventh Circuit has held as a matter of law that as few as 1,400 jobs can meet the Deputy Commissioner's burden at Step Five to find other work that exists in significant numbers in the national economy that a claimant can perform. *Lee v. Sullivan*, 988 F.2d 789, 794 (7th Cir. 1993). The Court finds that substantial evidence meets the Deputy Commissioner's burden at Step Five.

## IV.
### CONCLUSION

"The standard for disability claims under the Social Security Act is stringent." *Williams-Overstreet v. Astrue*, 364 F. App'x 271, 274 (7th Cir. 2010). "Even claimants with substantial impairments are not necessarily entitled to benefits, which are paid for by taxes, including taxes paid by those who work despite serious physical or mental impairments and for whom working is difficult and painful." *Id*. at 274. Taken together, the Court can find no legal basis presented by Andrew M. to reverse the ALJ's decision that he was not disabled during the relevant time period. Therefore, the decision below is **AFFIRMED**. Final judgment will issue accordingly.

SO ORDERED.

Dated: 27 AUG 2018

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

J. Frank Hanley, II
LAW OFFICES OF J. FRANK HANLEY II, INC.
jfrankhanley@jfrankhanley.com

Kathryn E. Olivier
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
kathryn.olivier@usdoj.gov